IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-01651-MSK-KMT

JULIE CHEN,

    Plaintiff,

v.

CENTURYLINK, as Sponsor and Administrator of the CenturyLink Employee Benefit Plan,

    Defendant.

## OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff, Julie Chen's, request for judicial review of the decision made by the Defendant, CenturyLink, denying her long-term disability benefits under its Employee Benefit Plan. The Administrative Record (AR) is found at **# 26, 27, 28, 29**. Briefing on the Record is complete (**# 34, 35, 36**).

### I. Jurisdiction

CenturyLink's Employee Benefit Plan is governed by the Employee Retirement Income Security act of 1974 ("ERISA"), 29 U.S.C. § 1131, *et seq.* Section 1132 permits a person denied benefits under an employee benefit plan to challenge the denial in federal court. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. Factual Background

### A. The Plan

Between 1986 and 1995, Ms. Chen worked for U.S. West (CenturyLink's predecessor) as an accounting systems analyst, a budget analyst, and a business case analyst. At all times, she was covered by U.S. West's Employee Benefit Plan. This Plan became the CenturyLink Disability Plan (the Plan).

The Plan provides employees with both short and long term disability benefits. Short term benefits last up to 52 weeks. Long-term benefits are governed by Section 1.15(d) of the Plan. Long term benefits are available in two stages. A participant is entitled to an initial twelve months of benefits, after which he or she may apply for permanent benefits. For purposes of such benefits, Section 1.15(d)(ii) defines "disabled" as follows:

> "(1) the Participant is unable to engage in any occupation or employment, which inability is supported by Objective Medical Documentation, or (2) the Participant is unable to engage in any occupation or employment, for which he/she might reasonably become qualified through training or education that pays 60% or more of his/her pay at the time his/her employment ended due to disability."

"Objective Medical Documentation" is defined as:

> "[W]ritten documentation of observable, measureable, and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, psychological testing, etc."

The Plan requires recipients of long-term disability benefits to demonstrate continued eligibility. Section 5.1(d)(ii)(II) of the Plan obligates them to provide the Plan Administrator with documentation timely supporting a disability. Likewise, Section 5.1(d)(ii)(IV) requires recipients to submit "Reports for Medical or Psychological exams from time to time, at the request of the . . . Plan Administrator, for purposes of determining the participant's condition."

Finally, Section 3.2(d) empowers the Plan Administrator to request claimants to supply "such information as necessary for the proper administration of the Plan, including for purposes of proving claimant's eligibility and as a condition to a claimant's receipt of benefits. Documentation must include Objective Medical Documentation."

### B. Ms. Chen's Disability

In October of 1995, Ms. Chen was diagnosed with end-stage renal disease accompanied by musculoskeletal pain and discomfort. From October 25, 1995 through October 29, 1996, she received short-term disability benefits, then beginning on October 30, 1996, she received the initial twelve-months of long-term disability benefits provided for by the Plan. After that period expired, Ms. Chen applied for and was deemed eligible for permanent, long term disability benefits.

In 2000, Ms. Chen had a successful kidney transplant. Following the surgery, she required immunosuppressive drugs that caused chronic fatigue and other side effects. Due to her fatigue and compromised immune system, Ms. Chen's treating nephrologist, Dr. Thomas Mooney, has consistently opined that she was unable to perform work related activities.

Between 1997 and 2013, Plan Administrators periodically revisited Ms. Chen's eligibility and on all but one occasion,[1] continued her long-term disability benefits. In 2013, the Plan

---

[1] During a review in May of 2004, a nephrologist, Dr. Michael Gross, reviewed Ms. Chen's record at the request of the then-Plan Administrator. He determined that she could perform sedentary work. The Plan ordered a Functional Capacity Evaluation, which confirmed Dr. Gross's finding. Based on this determination, a disability case manager for the Plan concluded that Ms. Chen was no longer eligible for long-term disability benefits. AR 410-11. However, it appears that this denial was either never implemented or overturned on appeal, and the parties do not dispute that Ms. Chen continued receiving long-term disability benefits until 2014.

Administrator delegated all its authority and responsibilities to a third party administrator, The Standard Insurance Company (Standard), which began another review of Ms. Chen's eligibility.

Dr. Paul Jain reviewed Ms. Chen's medical records[2], and opined that Ms. Chen had no limitations or restrictions preventing her from performing sedentary work. In December 2013, benefits analyst Jessie Burke observed that medical documents showed Ms. Chen to be "stable but with complaints of fatigue." However, she also observed that reference was made to impending travel. As a result, Ms. Burke sent a letter to Ms. Chen asking for updated medical information, but no information was returned.

In January 2014, Ms. Burke sent a medical questionnaire to Dr. Mooney. Dr. Mooney completed the form, stating that Ms. Chen suffered from "extreme fatigue, decreased energy and endurance." He opined that while Ms. Chen is able to care for most personal needs alone, she is unable to perform sedentary work.

In February of 2014, Standard engaged a nephrologist, Dr. Joseph Lee, to review Ms. Chen's medical records. Dr. Lee issued a report finding that, despite fatigue and sporadic infections, Ms. Chen was "functional and reportedly goes on vacation/travels", that "chronically, she has no limitations/ restriction as a result of her fatigue/ kidney transplant/medications/warts."

---

[2] The administrative record is replete with notes and records of treatment by Ms. Chen's, nephrologist, Dr. Mooney. A large part of these records are office visit notes from 2002 through 2014, including visit reports from October of 2008, October of 2009, and September of 2012.. Some notes characterize Ms. Chen as stable, doing well, and not reporting fatigue or daily limitations, two visit reports (in mid and late 2013) discuss Ms. Chen's plan to travel to Europe. Other notes, such as one from March 2012, describe Ms. Chen as fatigued. Still others address particular health concerns: two from 2013 discuss Ms. Chen's heightened risk of infections, and one from 2013 mentions treating Ms. Chen for diverticulitis. The administrative record also contains insurance forms or questionnaires completed by Dr. Mooney, including periodic Statements of Disability from April 2002 through November of 2009 a 2011 Questionnaire for a prior plan administrator, and a Standard MedicalQuestionnaire completed on March 12, 2014. In each of these documents, Dr. Mooney opines that Ms. Chen suffers from extreme fatigue and cannot work at a sedentary level job.

4

Thus, he concluded that she was "capable of performing full time sedentary and/or light level work." Standard also requested a second document review by Dr. Paul Jain, who likewise opined that Ms. Chen was not impaired by limitations or restrictions precluding sedentary work.

Based on these reports, Standard advised CenturyLink that Ms. Chen's long-term disability benefits should be terminated because her file lacked "objective medical documentation to support that she suffers physical limitations and/or restrictions which would prevent her from performing her company-assigned job." Standard also informed Ms. Chen that her claim was denied via a letter in February, 2014. The letter explained that Ms. Chen did not meet the Plan's definition of disabled because her medical records suggest that she is able to perform full-time sedentary level work.

In August 2014, Ms. Chen appealed Standard's determination. Standard assigned Gordon Harris, a Benefits Review Specialist, to review the matter. Ms. Chen submitted additional documentation, including a letter from Dr. Mooney and a Vocational/Employability Assessment.

First, Dr. Mooney's letter, dated October 21, 2014, summarized Ms. Chen's condition. He observed that she suffered from "chronic, ongoing constitutional symptoms of malaise, fatigue and decreased energy" and "limited functional status through the day and throughout the week." Dr. Mooney explained that her symptoms interfered with her ability to perform daily activities. "On a good day she can be active with light household and personal tasks before she has to rest for a few hours"; on a bad day she can accomplish very little. He added that Ms. Chen is susceptible to illness and infections, and occasionally experiences other transplant complications that sometimes require hospitalization and medical treatment.

Second, a Vocational/Employability Assessment was conducted by Joseph Blythe. Mr. Blythe interviewed Ms. Chen and examined her medical records. He determined that Standard's

conclusion that Ms. Chen could return to a sedentary occupation was flawed because: 1) Ms. Chen had not worked for nineteen years, and thus, her skills – specifically, her computer skills and knowledge of accounting software – were obsolete; 2) warts on her hands affected her ability to reach, handle, or finger items, a task necessary for her occupation; 3) she suffered consistent fatigue and therefore would only be able to work intermittently; 4) her weakened immune system both rendered her susceptible to illnesses and lengthened her recovery time; and 5) Dr. Mooney, who had the most intimate knowledge of Ms. Chen's condition, remained consistent in his opinions of her abilities for many years.

Mr. Harris then directed that a second Vocational Assessment be performed by Julie Sliga. In December of 2014, Ms. Sliga examined several documents including Ms. Chen's completed education, training and experience form, an Employability Evaluation Report from 2004, Dr. Lee's February 2014 review, Mr. Blythe's report, and an interview with Ms. Chen from January 22, 2014. Ms. Sliga agreed that Ms. Chen's accounting skills were obsolete. However, based on Ms. Chen's education, verbal and written communication skills, presentation skills, organizational ability, and basic computer skills, she identified two appropriate sedentary occupations that Ms. Chen could perform – telephone solicitor and customer service representative. According to the Bureau of Labor statistics, each job would pay more than 60% of her base pay at the time Ms. Chen became disabled.

In January of 2015, Mr. Harris also obtained a report from an internal medicine physician, Dr. Janette Green. Dr. Green conducted a medical record review, and determined that, although Ms. Chen complained of fatigue, "only in recent documentation" did Dr. Mooney report that the fatigue was problematic and that severe, limiting fatigue was not consistently

6

documented. Dr. Green thus found that objective documentation in Dr. Mooney's records was not sufficient to preclude Ms. Chen from working a sedentary occupation.

On February 19, 2015, Mr. Harris affirmed Standard's denial of benefits. In his letter to Ms. Chen. Mr. Harris explained that he had reviewed "all of the claim file documentation," including all the "medical documentation," [3] but had particularly focused on the information relevant to Ms. Chen's abilities as of February 28, 2014 (the date her of her benefit denial) and beyond. Applying the Plan's definitions, Mr. Harris found that there was insufficient Objective Medical Documentation to conclude that Ms. Chen was unable to perform a sedentary job that paid 60% or more of her base pay at the time she became disabled. Specifically, Mr. Harris found that: 1) Dr. Mooney's opinion (as described in his October 21, 2014 letter) that Ms. Chen's "extreme fatigue, decreased energy and endurance" and "limited functional status" prevented her from working a sedentary job was inconsistent with office visit notes in which he describes Ms. Chen as stable and doing well; 2) travelling to Europe, Hawaii, and Miami required a certain level of endurance which was, in some ways, more taxing than working a

---

[3] Specifically, he referred to the following:

- A June 2004 Functional Capacity Evaluation concluding that though Ms. Chen is limited by fatigue, she is capable of sedentary work;
- Dr. Mooney's visit reports from October 2008, October 2009, March 2012, September 2012, January 2013, May 2013, and September 2013.
- Dr. Johs', February 2013 examination of Ms. Chen;
- Ms. Chen's June 2014 emergency room visit diagnosing diverticulitis;
- A July 2014 report from Broomfield Family Practice;
- Dr. Mooney's completed November 2009 Statement of Disability form, his March 12, 2014, returned Standard Medical Questionnaire and his October 21, 2014 letter;
- Evaluations by reviewing doctors completed at the request of Standard, including those by Drs. Lee, Jain, and Green;
- Ms. Chen's post-transplant domestic and international travel, namely trips to Europe, Hawaii, and Miami; and
- The Vocational/Employability Assessments performed by Mr. Blythe and Ms. Silga.

7

sedentary job – that Ms. Chen is able to go on trips suggested that her fatigue was not severe enough to prevent her from working a sedentary job; and 3) although Ms. Chen had been out of the workforce for some time, she still possessed the skills for two jobs which would pay more than 60% of her compensation at the time of her disability.

### III. Standard of Review

Ms. Chen now appeals from Standard termination of her long term disability benefits under the Plan. The Plan is governed by ERISA. ERISA contains no statutory standard for review of benefit decisions, therefore the Court is guided by case law.

When an ERISA plan gives its administrator discretionary authority to determine eligibility for benefits, a court reviews a denial of benefits using an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 115 (1989); *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009); *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1119 (10th Cir. 2006). A denial can be arbitrary or capricious for a number of reasons - if it is not supported by substantial evidence, if it is based on a flawed process, or if the plan administrator has made a mistake of law, acted in bad faith, or was compromised by a conflict of interest. *Graham*, 589 F.3d at 1358; *Adamson*, 455 F.3d at 1212.

Generally, a plan administrator's decision is not arbitrary and capricious so long as it predicated upon a reasoned basis and supported by substantial evidence. *Graham*, 589 F.3d at 1357 (*quoting Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker]"; it requires more than a scintilla but less than a preponderance. *Flint v. Sullivan,* 951 F.2d 264, 266 (10th Cir.1991) (citations omitted). It is not uncommon for a record to contain conflicting evidence, but the presence of conflicting

evidence does not make the decision arbitrary or capricious. *Robison v. Reliance Standard Life Ins. Co.*, 2017 WL 972126, *5 (W.D. Okla. March 10, 2017) (*examining Roganti v. Metropolitan Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015)). Although a plan administrator cannot indiscriminately refuse to credit a claimant's evidence, there are no requirements as to how an administrator must weigh the evidence. *Roganti*, 786 F.3d at 212. For example, if an administrator is faced with two conflicting medical conclusions and disfavors that of the treating physician because it contains less objective medical assessments, the plan administrator's decision may still be supported by substantial evidence. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Sandoval*, 967 F.2d at 382; *see Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 90 (2d Cir. 2009). Indeed, an administrator's decision need not be the only logical one or the best one, it must only fall "somewhere on a continuum of reasonableness – even if on the low end." *Adamson*, 455 F.3d at 1212; *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999); *see also Schandel v. Siebert*, 175 F.Supp.3d 1238, 1245 (D. Colo. 2016).

In reviewing a denial of benefits, the Court acts in an appellate capacity, limiting itself to the record considered by the plan administrator and the grounds stated by the administrator in support of the decision. *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013); *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994); *Spradley v. Owens–Ill. Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1141 (10th Cir. 2012). The Court does not engage in *de novo* review, and thus does not substitute its assessment of the evidence for that of the administrator. Simply because the Court might have reached a different outcome, the plan administrator's decision is not arbitrary and capricious. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992).

## IV. Analysis

Ms. Chen argues that Standard's denial of benefits was arbitrary and capricious because it: 1) denied benefits after providing them for nineteen years; 2) did not review a complete record; 3) failed to consider that she was eligible for social security benefits; 4) emphasized only the portions of the record that supported denying benefits; 5) did not conduct a full, impartial administrative review; and 6) improperly determined that because Ms. Chen is able to travel, she could perform sedentary work.

In deference to the standard by which ERISA appeals are reviewed, the Court notes that there is no explicit challenge by Ms. Chen as to sufficiency of the evidence to support the administrator's denial of benefits. To the extent that there is an implicit challenge, the Court finds that although the evidence in the record is conflicting, the administrator's decision is supported by substantial evidence.

Standard identified, both in the February 28, 2014 letter of denial and in the February 15, 2015 letter affirming that denial, the evidence supporting its decision. This included reliance upon 1) medical opinions that Ms. Chen was capable of performing sedentary work; 2) medical opinions that the fatigue described by Dr. Mooney was not supported by objective medical documentation; and 3) a vocational expert's determination that Ms. Chen could obtain and perform work that would pay more than 60% of her base compensation at the time she stopped working due to disability.

True, the medical evidence is conflicting. On one hand, there is evidence supporting a finding that Ms. Chen is disabled. For example, Dr. Mooney periodically completed insurance forms for Ms. Chen in which he repeatedly expressed his opinion that she suffers from severe fatigue. Standard considered these forms, but afforded them less weight because they were

10

prepared for purposes of securing disability benefits for Ms. Chen. In addition, at least one of office visits report by Dr. Mooney reflects that Ms. Chen suffers from fatigue, while other visit reports mention other health concerns such as susceptibility to infection and diverticulitis.[4] Standard considered these reports.

On the other hand, different visit reports by Dr. Mooney and others are more optimistic, describing Ms. Chen as stable and doing well, able to engage in light walking, and indicating she has been, and plans to, travel. In addition, the record contains paper reviews conducted by three independent[5] physicians, all of whom who opine that Ms. Chen is not disabled. All three believe Ms. Chen is able to perform sedentary work. For example, Dr. Lee concludes that following Ms. Chen's transplant she is "stable with excellent function," and "capable of performing full time sedentary work." In more detail, Dr. Green found that Ms. Chen's "severe limiting fatigue is not consistently demonstrated throughout the documentation," which more often refers to her fatigue as "mild." Moreover, she found that Ms. Chen's "limitations are based on [her] self-reported complaints"; there is "no documented diagnostic studies or exams which demonstrate . . . fatigue of a severity that would give [Ms. Chen] limitations or restrictions to a sedentary level occupation."

The record also contains disparate conclusions by vocational experts as to whether Ms. Chen is employable in a sedentary occupation that pays 60% or more of her base pay at the time she first became disabled. Ms. Chen's own Vocational/Employability Assessment, done by Mr.

---

[4] Standard recognized that in 2013 Ms. Chen developed "recurrent diverticulitis," reported initially by Dr. Mooney. Dr. Johs conducted a more detailed examination of Ms. Chen related to her diverticulitis, which he characterized as mild. And in June of 2014, Ms. Chen visited the emergency room due to a bout of diverticulitis. There is no evidence however, that diverticulitis contributed to Ms. Chen's disability or specifically, her fatigue.

[5] The physicians affirm that their compensation was not dependent on the specific outcome of the case. Ms. Chen has not offered evidence to dispute this fact.

Blythe, concluded that because Ms. Chen had been out of the workforce for nineteen years, her skills were obsolete and dated, making her unemployable. Standard's vocational consultant, Ms. Sliga, disagreed. She examined Ms. Chen's skills and education and agreed that Ms. Chen was no longer employable as an accountant. However, she determined that Ms. Chen could work as a telephone solicitor or customer service representative. Both jobs, according to the Bureau of Labor statistics, are sedentary jobs that pay more than 60% of Ms. Chen's base pay. Standard accepted Ms. Sliga's report. Standard noted that Mr. Blythe did not consider alternative occupations or offer an opinion as to whether Ms. Chen was able to obtain other (non-accountant) employment still paying 60% of her base pay.

In the face of such conflicting evidence, the Court's role is not to determine its weight or to substitute its view for that of the administrator. Standard's denial is supported by substantial evidence. The question then becomes whether its decision is arbitrary or capricious for another reason.

**A. Inconsistency with Prior Eligibility Decisions**

Ms. Chen contends that it was arbitrary for Standard to deny benefits after paying them for nineteen years. She particularly objects to the fact that during the time she was receiving benefits, the Plan Administrators accepted the opinions of Dr. Mooney with little question. This argument is appealing from a lay perspective, but it ignores the fact that new medical and vocational evidence was obtained prior to Standard's decision.

ERISA does not prevent a plan administrator from reversing course and finding a claimant no longer entitled to disability benefits. *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1099 (10th Cir. 1999). A denial of benefits, even after many years during which benefits were paid, is not arbitrary and capricious if it is supported by new medical or other information. *See, e.g.,*

*Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992). For example, in *Sandoval*, a claimant had received disability benefits for some eleven years before his benefits were denied. The plan administrator, as part of its routine claims review, requested additional health information from the claimant and scheduled an independent medical evaluation. The independent evaluating physician opined that the claimant was no longer disabled. The claimant submitted his treating physician's report reaching the opposite conclusion. However, the plan administrator relied upon the independent evaluation, which contained more objective medical findings. On appeal, the Tenth Circuit affirmed the plan administrator's denial, concluding that it was supported by substantial evidence – namely, a detailed and contemporary medical report. *Sandoval*, 967 F.2d at 378-79, 3822; *see also, Meraou v. Williams Co. Long Term Disability Plan*, 221 Fed App'x 696, 706 (10th Cir. February 9, 2007) (that a plan administrator found the claimant disabled some fifteen years prior does not bind later reversal as the claimant is under a continuing obligation to prove disability status).[6]

The administrative record is replete with documents in which Dr. Mooney opined that Ms. Chen was disabled: in January of 2003 Dr. Mooney indicated that Ms. Chen was "totally disabled from any occupation," due to her restrictions as to daily activities such as her ability to attend meetings, respond to work pressures, and perform simple and complex tasks and in 2008, Dr. Mooney opined that Ms. Chen was disabled from any occupation, her health status had not changed or improved, and she suffered from severe daily fatigue. (Both of these observations were made in the context of responding to insurers' requests for information as to Ms. Chen's

---

[6] Ms. Chen directs the Court to *Miller v. American Airlines, Inc.*, 632 F.3d 837, 848 (3d Cir. 2011). In *Miller*, the Third Circuit determined that an administrator's reversal of its prior decision to award benefits is an irregularity suggesting abuse of discretion. The facts in *Miller* are distinguishable from those presented here. In *Miller*, the Third Circuit's decision turned on the fact that the reversal of a prior grant of benefits was made *without receiving any new medical information.*

disability.) In 2012, Dr. Mooney indicated that Ms. Chen's fatigue and malaise were continuing, and she was susceptible to frequent infections.

In the course of its review and the appeal, Standard obtained and reviewed new evidence. Three doctors contemporaneously examined Ms. Chen's medical records and offered opinions. All three concluded that objectively, her medical conditions did not prevent her from working a sedentary job. Standard also noted that Ms. Chen's historical medical records contain conflicting evidence. For example, Dr. Mooney's regular visit reports sometimes differ, to a degree, from conclusions he made in the context of responding to an insurance questionnaire. Some visit reports omit any severe fatigue and do not suggest Ms. Chen is unable to engage in daily activities or travel.

Accordingly, the Court cannot find that Standard's denial of benefits was arbitrary and capricious simply because, for the previous nineteen years, Ms. Chen was deemed eligible.

### B. Failure to Consider a Social Security Determination

Ms. Chen contends that Standard's failure to consider that she had been determined to be disabled for purpose of social security benefits made its decision arbitrary and capricious.

Although a plan administrator should not ignore a claimant's eligibility for social security disability benefits, *see Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110 (2008), the validity of a claim for benefits under an ERISA plan turns on the interpretation of the plan at issue, not on whether the claimant is eligible for social security benefits. *Croll v. Connecticut General Life Ins. Co.*, 863 F.Supp.2d 1093, 1102 (D. Colo. 2012) (*citing Meraou*, 221 Fed App'x at 706).

The weight given a social security determination is determined on a case by case basis, and is affected by a number of factors. *Torrey v. Qwest Communications International, Inc.,* 838 F.Supp.2d 1201, 1210 (D. Colo. 2012). *Glenn*, *supra*, is instructive. There, the plan

administrator directed the claimant to first seek social security benefits, which the claimant did. Later, using a standard nearly identical to that employed under the Social Security Act, the plan administrator denied benefits under an ERISA plan. The Supreme Court agreed with the Sixth Circuit that the plan administrator's inconsistent positions, coupled with other red flags in the plan administrator's review, made the denial decision arbitrary and capricious.

Here, however, Ms. Chen was determined to be disabled for Social Security purposes in 1996, before she had a kidney transplant. Standard acknowledged that determination in its letter of February 28, 2014. Unlike the facts in *Glenn*, there is no showing that the Social Security standards applied in 1996 are the same as those applicable under the Plan. But more importantly, Ms. Chen's condition at the time of her Social Security Disability determination is in 1996 was significantly different from her post-transplant condition at the time of Standard's decision at issue almost 20 years later.

Based on these circumstances, the Court does not find that Standard's refusal to give more weight to Ms. Chen's eligibility for social security benefits rendered denial of benefits arbitrary and capricious.

### C. "Cherry-picking" the Record

Ms. Chen also complains that Standard did not consider the entire record, but instead relied only on evidence favoring denial of her claim (a practice described as "cherry-picking").

As a general rule, a plan administrator is not required to "pore over the record," picking out and addressing all evidence supporting payment or denial of a claim. *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 806-07 (10th Cir. 2004). But at the same time, the plan administrator cannot shut her eyes to readily available evidence that suggests the claimant is entitled to benefits. *Id.*

15

Often there is evidence that both supports payment and that which supports the denial of benefits. As the Court has emphasized, where there is conflicting evidence, the plan administrator's reliance on some evidence and rejection of other evidence does not make the decision arbitrary or capricious. *See Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212-13 (10th Cir. 2006). In such situation, the question is whether the administrator reviewed and considered all of the evidence. *See, e.g. Brown v. Liberty Assur. Co. of Boston*, No. CIV-14-0519-HE, 2015 WL 3651542, *3 (W.D. Okla. June 11, 2015),

Here the Court is satisfied that Standard considered all of the evidence that Ms. Chen supplied. It directly addressed Dr. Mooney's reports and assessments. It directed that evaluations of her ability to work be prepared and it considered the inconsistencies in the reports submitted by its own expert as well as hers. Ms. Chen points to evidence that she contends was not considered by Standard, but the record reflects that Standard did, indeed, consider such information.[7] It simply did not find the evidence persuasive.

Standard is afforded discretion to weigh and evaluate the evidence, and it offered reasonable explanations for its evidentiary determinations. The fact that it found some evidence more compelling that other evidence does not mean that Standard acted improperly.

---

[7] Ms. Chen contends that Standard focused on office visits where Dr. Mooney did not report fatigue or problems, while ignoring those visit reports where he did. Ms. Chen has identified office visits on several dates in which Dr. Mooney recorded that Ms. Chen was experiencing fatigue and other health problems. However, the Court finds no evidence that Standard ignored these. Rather, Standard's February 15, 2015 letter detailing its denial of benefits after administrative review, states that it considered medical records prepared by Dr. Mooney that date back at least to 2008, including those that detail Ms. Chen's limitations. Standard also considered a report from March 2, 2012, in which Ms. Chen reported to Dr. Mooney that she was tired. Most telling, however, is that some of the reports Ms. Chen contends that Standard ignored are actually cited by Standard in its February 15 letter. For example, Ms. Chen contends that Standard did disregarded Dr. Mooney's report on January 28, 2013 or that dated September 6, 2013. To the contrary, Standard specifically referenced the reports from both of those dates, noting that in the former Dr. Mooney evaluated Ms. Chen's diverticulitis and in the latter Ms. Chen reported "mild fatigue."

Accordingly, the Court does not find that Standard disregarded evidence favorable to Ms. Chen.

**D.  Consideration of Travel**

Ms. Chen contends that Standard's consideration of her travel made its decision arbitrary and capricious. The Court disagrees.

There are no specific prohibitions on what sort of evidence a plan administrator may consider in determining whether a claimant is disabled. It is proper to consider a claimant's daily activities and limitations and to verify a claimants' symptoms and alleged limitations by conducting limited surveillance of a claimant's daily life. *Gross v. Sun Life Assur. Co. of Canada*, 734 F.3d 1, 25 (1st Cir. 2013). In considering symptoms and limitations, a plan administrator may consider those activities that a claimant performs that could be inconsistent with the medical limitations, including traveling. *Tsoulas v. Liberty Life Assur. Co. of Boston*, 454 F.3d 69, 77 (1st Cir. 2006).

The mere fact that Standard considered references to Ms. Chen's travel was not improper. The question is whether it considered such information in light of her medical condition.  It might be improper for a claims administrator to conclude without any medical evidence that her travel *per se* precluded a finding disability.  But here, Ms. Chen's ability and inclination to travel was considered by medical experts in the context of her medical symptoms, particularly her persistent fatigue. Standard relied upon the medical opinions that  Ms. Chen's travel was inconsistent with her claims of debilitating fatigue.  Although the Court might not necessarily have weighed the evidence in the same way as the Plan Administrator, it is not for the Court to substitute its assessment of the evidence for that of Standard.

**E.  Full and Fair Impartial Review**

Ms. Chen makes two arguments in this context. First, she contends that Standard failed to provide her with a full and fail review because the claims examiner who initially denied her claim was "involved" in the review. Second, she takes issue with the fact that the administrative record is absent of any documentation for a three-year period (September of 2004 through October of 2007). Neither is availing.

There is no doubt that Plan participants are entitled to full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C. § 1133(2); *LaAsmar v. Pehlps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins.* Plan, 605 F.3d 789, 797 (10th Cir. 2010). A full and fair review involves a two-step process: 1) adequate notice to the claimant; and 2) a reasonable opportunity for a fair review. *Brimer v. Life Ins. Co. of N. Am.*, 462 Fed App'x 804, 808-09 (10th Cir. February 10, 2012). A reasonable opportunity for fair review is the opportunity for the claimant to submit written comments, documents, records, and other information relating to eligibility for benefits. 29 U.S.C. § 1133(2). Fair review also requires a claimant know the relevant information, including "what evidence the decision-maker relied upon." *Id. Benson v. Hartford Life & Acc. Ins. Co.*, 511 Fed App'x 680, 686 (10th Cir. Feb. 14, 2013) (*quoting Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 893–94 (10th Cir.1988)); *see also Sandoval*, 967 F.2d at 382. The necessary procedures required for a full and fair review are also outlined in great detail in 29 C.F.R. § 2560.503-1(h).

First, Subsection (h)(3)(ii) of the Code of Federal Regulations mandates that a review "does not afford deference to the initial adverse benefit determination," and "is conducted by an appropriate named fiduciary of the plan" who is "not the individual who made the adverse benefit determination that is the subject of the appeal." 29 C.F.R. § 2560.503-1(h)(3)(ii). Contrary to Ms. Chen's assertion, the review of Standard's denial decision was conducted by

Mr. Harris, a benefits analyst who was not involved in the initial denial. Although Mr. Harris asked the original claim examiner to arrange for an assessment, nothing suggests that the original claim examiner was involved in review process. Absent any showing that the vocational analysis was somehow affected by the claim examiner's role in setting it up, the Court finds no abridgement of Ms. Chen's rights to a full and fair review.

Ms. Chen also contends that records from September of 2004 through October of 2007 were not considered by Standard in its initial benefits denial. Assuming this to be the case, Ms. Chen has not explained why such records are necessary to a full and fair determination of her claim. These records pertained to time periods six to ten years before the claim assessment. How they would impact a determination of Ms. Chen's condition in 2013 or 2014 is unclear.

## V. Conclusion

Having reviewed the administrative record and the parties' briefs, the Court finds that there is substantial evidence to support Standard's denial and none of the alleged irregularities with Standard's procedure are sufficient to demonstrate that decision was arbitrary or capricious.. The Court therefor AFFIRMS the decision, and directs the Clerk of Court to enter Judgment in favor of the Defendant.

Dated this 18th day of May, 2017

**BY THE COURT:**

Marcia S. Krieger
United States District Court